## Richmond

INSURANCE COMPANY OF NORTH AMERICA V. CARL PERRY, ADMR.,
ETC., ET AL.

January 20, 1964.

Record No. 5660.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Allan S. Reynolds* (*White, Ryan & Reynolds,* on brief), for the plaintiff in error.

*Stanley E. Sacks* and *Robert B. Kendall* (*Sacks, Sacks & Kendall,* on brief), for the defendants in error.

CARRICO, J., delivered the opinion of the court.

This controversy arose when Carl Perry, Administrator of the estate of William Peterson, deceased, filed a motion for judgment against Robert C. Teabout, seeking damages for the death of Peterson allegedly caused by the negligent operation of an automobile by Teabout.

It was asserted in the motion for judgment that Teabout was an uninsured motorist and that Insurance Company of North America was liable to the administrator under the uninsured motorist provisions of an automobile liability insurance policy issued by the company to the city of Norfolk, by whom Peterson was employed, at the time of his death, as a police officer. A copy of the motion for judgment was served on the insurance company.

Thereafter, the insurance company filed a motion for declaratory judgment seeking a construction of the provisions of the policy and a determination of the rights of the parties.

The issues raised by the motion for declaratory judgment were submitted to the trial court on a stipulation of facts. In a memorandum opinion and in the final order, the court ruled that Peterson was, at the time of his death, an insured under the policy and that the uninsured motorist coverage of the policy was available to the administrator. The insurance company was granted a writ of error.

The stipulation of facts shows that on March 17, 1962, Peterson was on duty as a police officer for the city of Norfolk. Accompanied by a fellow policeman, Officer Debold, he drove a city-owned police cruiser to the Virginia Beach boulevard area of the city to serve a warrant. He parked the cruiser, placed its keys in his pocket and, with Officer Debold, walked along the roadway to a point 164 feet away from the police cruiser. He was there struck by the automobile operated by Teabout.

The police cruiser operated by Peterson was covered by the policy issued by the insurance company to the city of Norfolk as the named insured. The policy contained an uninsured motorist endorsement with the following provisions which are here pertinent:

"In consideration of the payment of the premium for this endorsement, the company agrees with the named insured, subject to the limits of liability, exclusions, conditions and other terms of this endorsement and to the applicable terms of the policy:

"Insuring Agreements

" I. Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:

"(a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured;

"(b) injury to or destruction of an insured automobile and and its contents, hereinafter called 'property damage';

"caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

" II. Definitions

"(a) Insured. The unqualified word 'insured' means

"(1) the named insured;

"(2) any person while occupying an insured automobile;"

.   .   .   .   .   .   .   .   .   .   .

"(e) Occupying. The word 'occupying' means in or upon or entering into or alighting from."

The uninsured motorist endorsement was placed on the policy pursuant to the requirements of Code, § 38.1-381 (b). This Code section provides that no policy or contract of insurance shall be issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums, within prescribed limits, which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.

Code, § 38.1-381 (c) defines the term "insured" as:

" . . . . the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above . . . . "

The sole question to be determined is whether Peterson, at the time and under the circumstances of the fatal accident, was an insured

under the provisions of the policy when read in the light of the uninsured motorist statute.

It is our opinion that the legislature, in enacting the uninsured motorist statute, intended to create two classes of insured persons, with different benefits accruing to each class.

The first class includes the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either. A member of this class is protected, "while in a motor vehicle or otherwise", and is conceded by the insurance company to be entitled to coverage if injured while a pedestrian.

The insurance company contends, however, that Peterson was not a member of this class. The administrator, on the other hand, contends that Peterson was the named insured because, (1) the insuring agreements of the policy undertook to pay the insured or "his legal representative" for the damages caused by an uninsured motorist; that Peterson was a legal representative of the city and entitled, therefore, to the coverage as the named insured; (2) the city could not fall victim to bodily injury or death, against which the policy insured, but only the city's agents, servants and employees could be subject thereto, and that Peterson, as an employee of the city, should be deemed, therefore, to have been the named insured.

We are not persuaded that Peterson was the named insured on the ground that he was a "legal representative" of the city. While he was authorized to represent the city in police matters in the course of his official duties, he was not its "legal representative" with respect to its rights and duties under the policy. Moreover, the language of other portions of the uninsured motorist endorsement shows clearly that the term was intended to mean a person acting in event of the incapacity or death of one entitled to make a claim under the policy.

Nor can we agree that Peterson, because of his status as an employee of the city, was the named insured, either under the wording of the policy or the language of the statute. The policy before us clearly states that the city of Norfolk is the named insured. The court cannot substitute the name of each of the many employees of the city in place of that of the city as the named insured and thus stretch the coverage of the policy to include each such employee and all of the members of his household specified in the statute. To do so would be to rewrite the policy, to make a new contract for the parties and to distort the meaning of the statute. This would extend the benefits granted and broaden the risks imposed to a degree

obviously never contemplated by the parties to the insurance contract nor intended by the legislature.

The proper construction of the uninsured motorist endorsement of the policy, read in the light of the statute, so far as is here pertinent, is that the city is insured against damage to its property resulting from the negligence of uninsured motorists and that those who use, with permission, or occupy its insured vehicles are insured against damages for bodily injury or death, resulting from the negligence of such uninsured motorists.

■ This brings us to a consideration of the second class of insured persons contemplated by the statute, that is, those "who use", with the consent, expressed or implied, of the named insured, the vehicle to which the policy applies and those who are guests in such vehicle. The insurance company concedes that had Peterson been operating or occupying the cruiser when he was killed, he would have been covered by the policy.

The insurance company contends, however, that Peterson was not operating or occupying the insured vehicle at the time of the accident and was not, therefore, entitled to coverage. The administrator asserts, on the other hand, that because Peterson was killed during the period of his permissive use of the cruiser, he was one "who uses" the insured vehicle, in the language of the statute, and thus entitled to coverage even though he was not operating or occupying the vehicle.

It is true that the legislature, in enacting the statute, employed the words, "any person who uses", rather than, "any person while using", in describing one in the second class who is entitled to coverage. And it is also true that the words so employed, standing alone and without relation to the remaining portions of the statute, might indicate that it was intended that coverage should be granted during the entire period of permissive use whether or not such person was then using the vehicle.

But it is of crucial importance to note that while the legislature provided for coverage to the named insured and the specified members of his household, "while in a motor vehicle or otherwise", it expressly omitted the use of this language with relation to one "who uses" the insured vehicle with permission. Had it been the intent of the legislature to afford the same protection to both classes, it could easily have achieved this result by placing the phrase, "while in a motor vehicle or otherwise" in a different position in the statute

or merely by repeating it when prescribing the rights of the permissive user.

It is our opinion that, as to a permissive user of an insured vehicle, the legislature intended, in the uninsured motorist statute, to provide protection against an injury which occurs to one while using such vehicle.

See Note, Uninsured Motorist Coverage in Virginia, by Collins Denny III, 47 Va. Law Review 145, at pp. 156, 157.

In the case before us, Peterson met his death when he was on foot, 164 feet away from the parked cruiser, engaged in the act of serving a warrant. Under these circumstances, we hold, as a matter of law, that Peterson's fatal injury did not occur while he was using the police cruiser. He was not then an insured under the policy. He was not then under the canopy of the coverage provided by the statute.

Accordingly, the judgment of the trial court will be reversed and set aside and a final order will be entered here declaring that the uninsured motorist coverage of the policy issued by Insurance Company of North America to the city of Norfolk is not available to Carl Perry, Administrator of the estate of William Peterson, deceased.

*Reversed and final judgment.*