GREAT AMERICAN INSURANCE COMPANY

V.

EGLENA F. CASSELL, ADMINISTRATRIX

Record No. 890301

March 2, 1990

Present: All the Justices

*S. James Thompson, Jr. (John T. Cook; Caskie & Frost,* on briefs), for appellant.

*Jonathon S. Kurtin (Gordon H. Shapiro; Lutins and Shapiro,* on brief), for appellee.

*Amicus Curiae:* Steven J. Talevi, Assistant City Attorney (Wilburn C. Dibling, Jr., City Attorney, on brief), representing Virginia Municipal League and City of Roanoke, for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

Great American Insurance Company (Great American) filed this suit for declaratory judgment against Eglena F. Cassell, administratrix of the estate of Robert G. Cassell, deceased. Great American asked the court to adjudicate its rights and obligations pursuant to the terms of a liability insurance policy that it had issued to the City of Roanoke (City). The trial court conducted an *ore tenus* hearing and considered as evidence stipulations, documents, and testimony of witnesses. Some of the testimony was disputed. The trial court made the following factual findings.

On November 1, 1985, Robert Cassell, Roanoke City Fire Department captain, and several other fire fighters responded to an emergency call. A fire had occurred in a car at the intersection of Westwood Boulevard and Shenandoah Avenue in the City. Captain Cassell and some of the fire fighters traveled to the scene in a fire pumper truck. They were followed by a fire tanker. The fire pumper truck and the fire tanker were owned by the City. Cassell was the senior officer in charge.

Cassell's fire pumper truck was parked in the eastbound lane of traffic on Shenandoah Avenue, halfway on the adjacent shoulder with its lights on. The fire truck (pumper) was approximately 20 to 25 feet from the disabled car. The car was facing west, straddling the center line. The other fire truck (tanker) was located on the opposite side of the disabled car, facing west. The fire trucks were being used to restrict or influence the flow of traffic and to provide a protective barrier for the fire fighters.

A booster line, which is a small fire hose connected to the pumper truck that transported Cassell to the scene, was used to extinguish the fire. The water that was used to put out the fire came from Cassell's truck rather than a street hydrant. Cassell used a crowbar that he had taken from the pumper truck to open the hood of the disabled car.

Cassell was standing in the westbound lane of traffic with Harvey Helm (another fire fighter) and Brenda Downs (owner of the disabled car). Cassell was using a writing pad and a clipboard that he had taken from the fire truck to complete a required fire report. The clipboard was stored on Cassell's fire truck and transported to the scene in that truck. Cassell was approximately 20 to 25 feet away from his fire truck when he was struck and killed by a speeding hit-and-run driver. Helm and Downs were also killed by the driver. The other fire fighters who assisted in extinguishing the fire were taking equipment back to the fire truck when Cassell, Helm, and Downs were killed.

In May, 1986, Cassell's administratrix filed a wrongful death action against Roger White, the alleged hit-and-run driver. At the time of the accident, Great American had issued a policy of liability insurance to the City. Cassell's administratrix contends that Great American's policy provided Cassell uninsured motorist coverage for this accident. Great American maintains that it has no obligations to Cassell because the fire truck was not being "used" as contemplated by Code § 38.1-381(c) (amended to § 38.2-2206B).[1] The trial court held that the fire truck was being "used" by Cassell and therefore coverage was applicable. We accept the trial court's factual determinations because there is ample evidence in the record to support them. Code § 8.01-680. The single issue that we consider in this appeal is whether Cassell's death arose out of the "use" of the fire truck.

In *Insurance Company of North America* v. *Perry, Administrator*, 204 Va. 833, 134 S.E.2d 418 (1964), we considered whether a police officer, who had left his police car to serve a warrant, was "using" the car at the time he was struck and killed by a motorist. Peterson, the decedent, was on duty as a police officer for the City of Norfolk. He drove a city-owned police cruiser to a neighborhood to serve a warrant. He parked the cruiser, placed the keys in his pocket, and got out of the cruiser. He and another officer walked down the road approximately 164 feet away from the police cruiser. He was killed when he was struck by a car. *Id.* at 834, 134 S.E.2d at 419. We held that the police officer was not a user of the car because he was 164 feet away from the parked car,

---

[1] Section 38.1-381(c) defines "insured" as "any person who uses with the consent, express or implied, of a named insured, the motor vehicle to which the policy applies . . . ."

engaged in the act of serving a warrant. *Id.* at 838, 134 S.E.2d at 421.

■ We agree with the trial court's finding that Cassell was an insured for purposes of the mandatory uninsured motorist coverage provided in Code § 38.1-381(c). Cassell was using the fire truck when he was struck and killed by the hit-and-run driver. The fire fighters parked the fire pumper and fire tanker on opposite sides of the disabled car, thereby creating a barrier to control traffic and protect the fire fighters. Cassell's fire truck was used to pump water (which was stored on the truck) through hoses to extinguish the fire. The clipboard and pad that were used to complete the required fire report were transported to the scene in the fire truck and were to be returned to the fire truck. Cassell was only 20 to 25 feet away from the fire truck when he was struck. Items which were taken from Cassell's truck to extinguish the fire were being returned to the truck when the accident occurred. Use of the fire truck to extinguish the fire, control traffic and protect the fire fighters, including Cassell, was an integral part of the fire fighters' mission. The mission had not been completed when the accident occurred. Unlike the police officer in *Perry*, Cassell was engaged in a transaction essential to the use of the fire truck when he was killed.

Accordingly, the decree of the trial court is

*Affirmed.*