Present:  All the Justices

UNITED STATES FIRE
INSURANCE COMPANY

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 942184          November 3, 1995

NORA RIVERA PARKER


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
William L. Person, Jr., Judge


In this insurance coverage case, we deal with the "use" of a motor vehicle in connection with a claim for underinsured motorist protection afforded by Virginia's uninsured motorist statute.

On September 8, 1989, appellee Nora Rivera Parker was employed as a landscape gardener by the manager of Ford's Colony, a residential development in James City County near Williamsburg. About 12:00 noon on that day, Parker and two other employees were planting winter cabbages at the development's entrance adjacent to Long Hill Road.  At that time, one Allen Byran Healy lost control of a motor vehicle he was operating on the Road and struck Parker, injuring her.

Subsequently, Parker filed a personal injury action against Healy seeking recovery in damages as the result of his wrongful conduct.  The vehicle operated by Healy was underinsured.

Later, appellant United States Fire Insurance Company filed the present declaratory judgment suit naming Parker a defendant, among others.  The insurer had issued a "Business Auto Policy" covering the Ford's Colony pickup truck that had been driven by Parker to the site where she was working at the time of the

injury. This liability policy provided underinsurance motorist coverage in accordance with Code § 38.2-2206, the uninsured motorist statute. Asserting that Parker claimed underinsured coverage under its policy, the insurer asked the trial court to declare that the policy did not provide such coverage for Parker in her claim against Healy.

As pertinent, Code § 38.2-2206 provides that no policy of bodily injury or property damage liability insurance "relating to the ownership, maintenance, or use of a motor vehicle" shall be issued in the Commonwealth unless it contains provisions undertaking to pay "the insured all sums that he is legally entitled to recover as damages" from the operator of an uninsured or underinsured motor vehicle. Code § 38.2-2206(B) defines the term "insured" as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured."

Following an evidentiary hearing, the trial court ruled in favor of Parker. We awarded the insurer this appeal from the September 1994 order declaring that the insurer must provide underinsured motorist coverage in the event Parker obtains a judgment in excess of $25,000, the amount of Healy's coverage.

The facts are not in dispute. On the day in question, Parker and her co-workers used the Ford's Colony pickup truck, with Parker driving, to carry them and the cabbages to the worksite and to transport a rake, trowel, and shovels they needed

to perform the task of planting the cabbages.  A two-way radio was installed in the truck; they were required to leave the radio "on" at all times enabling them to receive messages from their supervisor.

At the site, the trio worked as a team performing specific tasks directed by Parker.  She was to dig holes for the plants, another worker unloaded the cabbages, and the third worker planted the cabbages.

Although not directed to do so by their supervisor, they parked the truck at the site in such a position as to provide a "safety barrier" to protect them from speeding motorists.  They left a door of the truck open while planting the cabbages so they could hear the radio.

At the time of the accident, Healy's speeding vehicle left the paved portion of the Road, struck the truck, and then struck Parker as she was digging a hole in a flower bed 12 to 15 feet from the truck.  The workers had not completed their task; some plants remained in the truck and they needed to clean up the area.

In two prior cases dealing with vehicle "use," we considered the foregoing statutory provisions.  In Insurance Company of North America v. Perry, 204 Va. 833, 134 S.E.2d 418 (1964), the question was whether the permissive user of an insured vehicle was provided protection in the uninsured motorist statute against an injury that occurs to one "while using" such vehicle.  Id. at

- 3 -

838, 134 S.E.2d at 421. In <u>Great American Insurance Co.</u> v. <u>Cassell</u>, 239 Va. 421, 389 S.E.2d 476 (1990), we said the issue was whether the victim's death "arose out of the `use' of" the insured vehicle <u>Id</u>. at 423, 389 S.E.2d at 477.

Portraying the issue in the present case to be "whether Parker was using the truck at the time of her accident," the trial court concluded that Parker's activities constituted "use" of the vehicle for purposes of the statutory provisions. To support this conclusion, the court relied upon the facts that Parker remained close to the truck and the work had not been completed; also, the truck was being used as a barrier, to load and unload the plants, and for communication with the supervisor.

Whether the issue is framed as "while using" or "arose out of the use of," the crucial inquiry is: Was there a causal relationship between the incident and the employment of the insured vehicle as a vehicle? <u>See</u> <u>Travelers Ins. Co.</u> v. <u>LaClair</u>, 250 Va. ___, ___, ___ S.E.2d ___, ___ (1995), decided today.

In <u>Perry</u>, the deceased claimant, a police officer engaged in the act of serving a warrant, was on foot 164 feet away from his parked police cruiser, the insured vehicle. There, we held that the officer's fatal injury did not occur while he was using the vehicle. "He was not then under the canopy of the coverage" provided by the uninsured motorist statute. 204 Va. at 838, 134 S.E.2d at 421.

In contrast, we concluded in <u>Cassell</u> that the deceased

- 4 -

claimant, a fire fighter, was an insured for purposes of the statutory uninsured motorist coverage. There, fire fighters parked a pumper truck and a tanker truck, the insured vehicles, on a city street near a disabled car that was on fire. The deceased, senior officer in charge, rode to the scene in the pumper truck that was parked with its lights burning 20 to 25 feet from the car.

The fire trucks were being used to restrict or influence the flow of traffic and to provide a protective barrier for the fire fighters. A fire hose connected to the deceased's pumper truck was used to extinguish the fire; the water came from the truck rather than from a street hydrant. The deceased used a crowbar he had taken from the pumper truck to open the hood of the disabled car.

While standing in the street approximately 20 to 25 feet from his truck, and while completing a required report using a clipboard from his truck, the deceased was killed by a hit-and-run driver. Other fire fighters were reloading equipment into the deceased's truck at the time of the accident.

Notably, we said that employment of the fire truck "to extinguish the fire, control traffic and protect the fire fighters, including [the deceased], was an integral part of the fire fighters' mission. The mission had not been completed when the accident occurred. Unlike the police officer in Perry, [the deceased] was engaged in a transaction essential to the use of

the fire truck when he was killed."  239 Va. at 424, 389 S.E.2d at 477.

Unlike the deceased in Cassell, the claimant in the present case was not engaged in a transaction essential to the use of the pickup truck when she was injured.  In other words, she was not utilizing the truck as a vehicle at that time.  She was 12 to 15 feet away from the truck with her foot on a shovel in the act of digging a hole when struck.

The facts that the workers, independently and not because of any requirement by Ford's Colony, positioned the truck (which had no special, emergency warning lights) as a barrier, and that the radio was operating at the time (it could not be heard unless the workers were "in close proximity" to it), does not bring this case within the Cassell precedent.  In Cassell, the fire truck's lights were burning, a hose connected to the truck used water carried on the truck to extinguish the fire, and emergency vehicles suitable for use to control traffic were utilized as barriers at the scene.  Here, the truck merely was used as a means of transportation so that Parker could complete her landscaping duties.

Consequently, we hold that the court below erred.  The trial court's order will be reversed and final judgment will be entered here in favor of the insurer declaring that it does not owe underinsured motorist coverage to Parker under the statutorily mandated provisions of its insurance contract.

<u>Reversed and final judgment</u>.