Present: All the Justices

JOHNNY CALVIN NEWMAN, ET AL.

v.  Record No. 980025    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    November 6, 1998
ERIE INSURANCE EXCHANGE


FROM THE CIRCUIT COURT OF HENRY COUNTY
Martin F. Clark, Jr., Judge

This appeal of a declaratory judgment presents two issues of motor vehicle insurance coverage involving a child who was struck by a motor vehicle while walking across a highway to board a school bus.

The facts in the case are undisputed.  One morning in February 1993, seven-year-old Johnny Calvin Newman waited for his assigned school bus alongside the eastbound lane of Route 57 in Henry County.  Route 57 is a two-lane highway at this location.  The bus came to a stop in the westbound lane, across the road from Johnny.  The bus driver activated the bus' warning lights and its "stop arm."  To board the bus, Johnny had to walk across the eastbound lane of Route 57 and then cross in front of the bus.  As Johnny was walking across the eastbound lane, he was struck by a motor vehicle operated by Ephriam Drake Sayers.

The school bus, which was owned by the Henry County School Board, was insured under the Board's "commercial automobile liability" insurance policy issued by Erie Insurance Exchange (Erie).  The policy listed the Henry County School Board as the

named insured and included within its uninsured/underinsured motorist (UM/UIM) coverage "anyone while occupying" a vehicle insured under the policy.  The policy defined "occupying" as "in or upon, getting into or out of, or getting off."  The policy also was subject to Code § 38.2-2206, which mandates UM/UIM coverage for, among others, "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured."

Johnny, by his parents and next friends Randall and Brenda Newman, filed a motion for judgment seeking damages for personal injuries against, among others, the personal representative of Sayers' estate, the school bus driver, and the School Board. Pursuant to Code § 38.2-2206(F), a copy of the motion for judgment was served on Erie as an insurer providing potential UM/UIM coverage.

Erie filed a bill of complaint for declaratory judgment, asking the trial court to declare that Johnny was not an insured under the UM/UIM provisions of the School Board's policy.  For purposes of determining the availability of UM/UIM coverage, Erie and the Newmans stipulated the above-stated facts concerning how the accident occurred.  They further agreed that at the time of the accident, Johnny was not riding the bus as a passenger, was not a guest in the bus, and was not a named

2

insured or family member residing in the same household as a named insured.

Erie moved for summary judgment, arguing that no material facts remained in dispute and that it was entitled to judgment as a matter of law based on this Court's decision in Stern v. Cincinnati Insurance Company, 252 Va. 307, 477 S.E.2d 517 (1996). The trial court granted the motion for summary judgment and entered an order concluding that Johnny was not an insured under the UM/UIM provisions of the Erie policy. The court stated in its order that Johnny was not "using, occupying, getting on or getting off of the school bus at the time of the accident, as per Stern v. Cincinnati Insurance Company."

On appeal, the Newmans argue that Johnny was "occupying" the school bus at the time of the accident, as that term is defined in the Erie policy. They assert that since a school bus is a specialized type of vehicle, the differences involved in boarding that type of vehicle must be recognized when interpreting this policy term. They contend that the term "getting into" an insured vehicle, considered in the context of boarding a school bus, encompasses the very activity in which Johnny was engaged.

The Newmans also argue that Johnny was "using" the school bus at the time of the accident, within the meaning of Code § 38.2-2206. They contend that since Johnny was struck

3

while walking across the road after the bus driver had activated the bus' specialized safety devices, he was using those devices and was injured while engaged in an activity essential to the use of the bus as a vehicle.

In response, Erie argues that our decision in <u>Stern</u> controls both issues raised in this case. Erie contends that the facts in <u>Stern</u> are indistinguishable from the facts presented here, and that the policy language at issue in that case was very similar to the policy language before us. Thus, Erie asserts that the doctrine of <u>stare</u> <u>decisis</u> requires a conclusion that Johnny was not occupying or using the school bus insured by Erie.

In considering these issues, we determine first whether Johnny was "occupying" the school bus under the terms of the Erie policy. As stated above, the policy defines "occupying" as "in or upon, getting into or out of, or getting off." The portion of the definition most applicable to the facts of this case is the term "getting into." The Newmans agree with Erie that the facts in <u>Stern</u> are indistinguishable from the facts before us. There, a child was struck and injured by an oncoming motorist while walking across a road to board a school bus. <u>Id.</u> at 309, 477 S.E.2d at 518. To board the bus, the child was required to walk across one complete lane of traffic and then proceed in front of the bus that was stopped in the other lane.

4

She was struck in the lane opposite the lane in which the bus was stopped, two or three feet from the center line in the road. Id.

Under policy language that defined "occupying" as "in, upon, getting in, on, out or off," we held that the child was not "occupying" the school bus. Id. at 310-11, 477 S.E.2d at 519. We explained that the policy definition must be interpreted in relation to the term defined and stated that the word "occupying" "denotes a physical presence in or on a place or object." Id. at 311, 477 S.E.2d at 519. We held that, considered in this context, the terms "getting in" and "getting on" required a close proximity to the bus that was not demonstrated by the child's location since she was across the center line of the road from the bus when she was struck. Id.

Under the facts before us, there is no material difference between the policy language at issue in Stern and the language of Erie's policy. When Johnny was struck, his location in the lane opposite the lane in which the bus was stopped did not place him in such close proximity to the bus as would constitute a physical presence in or on it. See id. Thus, under the plain and ordinary meaning of the terms in the Erie policy, Johnny was not "occupying" the school bus at the time he was struck.

In arguing that he was "using" the bus within the meaning of Code § 38.2-2206, Johnny acknowledges that acceptance of his

5

position would require us to overrule the portion of Stern in which we concluded that the child was not using the bus when struck. There, we held that a bus driver used a bus and its equipment to create a safety zone for the child, but that "the safety measures did not constitute a use of the bus by [the child]." Id. at 312, 477 S.E.2d at 520. We stated that the child was not using the bus, within the meaning of Code § 38.2-2206, at the time she was struck "because she was not yet a passenger of the school bus." Id. at 313, 477 S.E.2d at 520. In reaching this conclusion, we stated that our holding was governed by our prior decisions in Insurance Company v. Perry, 204 Va. 833, 836, 134 S.E.2d 418, 420 (1964), and United States Fire Ins. Co. v. Parker, 250 Va. 374, 463 S.E.2d 464 (1995). Stern, 252 Va. at 312, 477 S.E.2d at 520.

Code § 38.2-2206(B) defines "insured," in material part, as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured." The coverage mandated by the statute is limited to injuries that the permissive user sustained while actually using the insured vehicle. Edwards v. GEICO, 256 Va. 128, 132, 500 S.E.2d 819, 821 (1998); Randall v. Liberty Mut. Ins. Co., 255 Va. 62, 65, 496 S.E.2d 54, 55 (1998); Perry, 204 Va. at 838, 134 S.E.2d at 421. In determining whether Johnny was actually "using" the school bus at the time he was injured within the

6

meaning of Code § 38.2-2206, the relevant inquiry is whether "there was a causal relationship between the accident and the use of the insured vehicle as a vehicle." Edwards, 256 Va. at 132, 500 S.E.2d at 821 (quoting Randall, 255 Va. at 66, 496 S.E.2d at 56); accord Parker, 250 Va. at 377, 463 S.E.2d at 466; Travelers Ins. Co. v. LaClair, 250 Va. 368, 372, 463 S.E.2d 461, 463 (1995).

We have illustrated the nature of this causal relationship in two groups of cases. The first group includes such cases as Stern, Parker, and Perry, in which we concluded that the injured persons were not "using" the vehicles in question within the meaning of Code § 38.2-2206. In Parker, a landscape gardener drove a pickup truck containing some tools and ornamental cabbage plants to the entrance of a residential development, where she parked the truck in a manner to provide a safety barrier from passing traffic. She left the truck door open in order to hear a two-way radio located inside the truck and was struck while planting the cabbages. We concluded that the gardener was not "using" the truck as a vehicle at the time she was injured by an uninsured motorist, because she was not "engaged in a transaction essential to the use of the pickup truck when she was injured." 250 Va. at 376-78, 463 S.E.2d at 465-66.

7

In _Perry_, we held that a police officer was not "using" his vehicle when he was struck and killed while attempting to serve a warrant.  At the time he was struck, the officer had turned off the engine, left the vehicle, and was walking along a roadway 164 feet from his police cruiser.  204 Va. at 834, 134 S.E.2d at 419.

The second group of cases discussing the causal relationship between an accident and the use of an insured vehicle as a vehicle includes such decisions as _Randall_ and _Great American Insurance Co. v. Cassell_, 239 Va. 421, 389 S.E.2d 476 (1990).  In those cases, we concluded that the injured party was "using" the insured vehicle at the time of injury, within the meaning of Code § 38.2-2206.  In _Randall_, a highway worker was struck and killed by a vehicle while placing lane closure signs along the side of a highway.  He had driven the insured vehicle to the site, left the engine running, and kept on the flashing yellow bubble light on top of the truck's cab while completing his assigned task.  The worker was six to ten feet behind the truck on the shoulder of the road at the time he was struck.  255 Va. at 64, 496 S.E.2d at 55.  We held that the worker was "using" the insured truck as a vehicle when he was struck because he was utilizing the truck's specialized equipment to perform his mission.  _Id._ at 67, 496 S.E.2d at 56-57.

In *Cassell*, a fire fighter was standing 20 to 25 feet away from a fire truck when he was struck and killed by an uninsured motor vehicle. The insured fire truck had transported to the scene of the fire both the fire fighter and the equipment used to fight the fire. The truck also was used at the scene as a physical barrier to restrict the flow of traffic. At the time the fire fighter was struck, he was using a writing pad and a clipboard that he had removed from the truck to complete a required fire incident report. We concluded that the fire fighter was "using" the fire truck at the time of the accident because the truck was an integral part of his mission, which had not been completed when he was struck and killed. 239 Va. at 424, 389 S.E.2d at 477.

In *Randall*, which we decided after *Stern*, we emphasized that

> actual use of the vehicle for purposes of UM/UIM coverage mandated by § 38.2-2206 is not restricted to the transportation function of a vehicle. If the injured person is using the insured vehicle as a vehicle and as an integral part of his mission when he is injured, he is entitled to UM/UIM coverage under § 38.2-2206. In this context, the use of a vehicle "as a vehicle" requires that at the time of the injury, the vehicle is being used in a manner for which it was specifically designed or equipped.

255 Va. at 66, 496 S.E.2d at 56 (citations omitted).

Our holding in *Randall* raises a question in this case concerning our earlier holding in *Stern*. That question is

9

whether there is coverage under Code § 38.2-2206 when an individual, who has not occupied an insured vehicle, utilizes the vehicle's specialized safety equipment as an integral part of performing his mission, with the immediate intent to occupy the vehicle. Applying the principles expressed in Randall, as well as those set forth in Edwards v. GEICO, 256 Va. 128, 500 S.E.2d 819, we answer this question in the affirmative.

A school bus driver is required by regulation to activate a school bus' warning devices "to warn approaching traffic to stop and allow pupils to cross the highway safely." 8 VAC 20-70-80. This regulation, enacted pursuant to the Board of Education's authority under Code § 22.1-177, illustrates the fact that the school bus' warning devices are intended for the child's use. Therefore, there is a dual use of the bus' specialized safety equipment. The bus driver uses the bus' specialized safety equipment to warn approaching traffic to stop, and the child uses the safety equipment as an integral part of his mission of walking across the street to board the bus.

Our decision in Stern, however, recognized only the bus driver's use of the specialized safety equipment. The decision effectively equated "use" of the bus with occupancy by stating that the child "clearly was not utilizing the bus as a vehicle because she was not yet a passenger of the school bus, and, therefore was not using the bus, within the meaning of Code

10

§ 38.2-2206, when she was injured." 252 Va. at 313, 477 S.E.2d at 520.

In no other case have we held that "use" of an insured vehicle, under Code § 38.2-2206, requires that an injured party be an occupant of the insured vehicle at some time prior to sustaining an injury. Moreover, we held to the contrary in Edwards, our most recent case addressing "use" of an insured vehicle under Code § 38.2-2206. There, a man was injured in the process of removing a flat tire from an automobile owned by an acquaintance. He did not drive or ride in the insured vehicle prior to being struck by the uninsured vehicle. Instead, he was using the insured vehicle's tire jack and spare tire to change the tire with the intention of driving the car to have the flat tire repaired. We concluded that he was "using" the insured vehicle, within the meaning of Code § 38.2-2206, because he utilized the insured vehicle's equipment as an integral part of his mission with the immediate intent to drive the vehicle after replacing the tire. 256 Va. at 133, 500 S.E.2d at 821.[*]

---

[*] Unlike the present case, the facts presented in Edwards did not place our ruling in Stern before us for reconsideration. In Edwards, we were presented with two certified questions from the United States Court of Appeals that did not involve the use of an insured vehicle's specialized safety equipment by the injured motorist. Thus, in restating the ruling in Stern that the child was not using the bus, we were not addressing the merits of that decision, but were stating only why that holding was inapplicable to the facts in Edwards.

11

In light of Randall and Edwards, we are compelled to overrule the holding in Stern that a child injured under the facts presented was not "using" the school bus, within the meaning of Code § 38.2-2206. Thus, under the facts now before us, we conclude that Johnny was using the school bus as a vehicle at the time he was injured, based on his use of the bus' specialized safety equipment and his immediate intent to become a passenger in the bus. Those facts establish the required causal relationship between the accident and Johnny's use of the bus as a vehicle.

In reaching this decision, we have given deliberate consideration to the critical role that the doctrine of stare decisis serves in insuring the stability of the law. See Selected Risks Insurance Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987). However, we have a duty of equal dignity to reexamine critically our precedent and to acknowledge when our later decisions have presented an irreconcilable conflict with such precedent. See Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997).

Under Stern, only children who have exited a school bus under the protection of the bus' safety equipment could be entitled to UM/UIM coverage when injured in a lane opposite the lane in which the bus was stopped. Yet, children injured in the same location while walking across the street to board the same

12

bus under the protection of the <u>same</u> specialized safety equipment would be denied such coverage.  Our action today also is taken to eliminate this paradox resulting from the application of <u>Stern</u>.

For these reasons, we will affirm in part, and reverse in part, the trial court's judgment.  We will enter final judgment declaring that Johnny was "using" the school bus at the time of the accident, within the meaning of Code § 38.2-2206, and was entitled to coverage under the UM/UIM portion of the Erie policy.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

"In Virginia, the doctrine of stare decisis is more than a mere cliché.  That doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles.  And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake."  <u>Selected Risks Ins. Co.</u> v. <u>Dean</u>, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987).

13

Established precedents ought not to vary with every change in the appellate court's personnel. Kelly v. Trehy, 133 Va. 160, 169, 112 S.E. 757, 760 (1922). Frequent overruling of an appellate court's decisions tends to bring adjudications of the tribunal "into the same class as a restricted railroad ticket, good for this day and train only." Smith v. Allwright, 321 U.S. 649, 669 (1944) (Roberts, J., dissenting). Responsible decisionmaking leaves no room for "jurisprudence of doubt." Planned Parenthood v. Casey, 505 U.S. 833, 844 (1992).

In common law cases, the interest in stability demands uniformity and certainty, particularly when rules of property and contract have been established. W. M. Lile, Some Views On The Rule of Stare Decisis, 4 Va. L. Rev. 95, 101 (1916). Dean Lile expressed the doctrine of stare decisis in general terms: "A decision by a court of last resort, in a litigated controversy, on a question of law necessarily involved in the judgment, becomes a precedent within that jurisdiction, for subsequent cases involving substantially similar facts." Id. at 97.

But the interest in stability is not the only interest stare decisis serves in common law cases. There are other concerns relating to the manner in which appellate judges decide cases. For example, "respect for precedent encourages the Court to be fair by reminding the Justices to treat like cases alike."

14

Note, Constitutional Stare Decisis, 103 Harv. L. Rev. 1344, 1349 (1990). Moreover, "respect for precedent helps promote public confidence in the law." Id. If an appellate court does not respect its own precedent, then the public, the bench, and the bar are less likely to have confidence in the decisions that are made. Furthermore, employing the doctrine of stare decisis assures the public that an appellate court's judgments are not arbitrary and that the court is controlled by precedent that is binding without regard to the personal views of its members. Id.

Against the background of these settled principles, a bare majority of this Court, in a case construing a contract, today overrules a holding that is merely two years old. The accident facts here and in Stern v. Cincinnati Ins. Co., 252 Va. 307, 477 S.E.2d 517 (1996), are substantially identical; the contract provisions are the same; and, the issues are identical. Yet a Court majority (including three members who were in the minority in Stern, and who ought to feel bound by it), strains to draw distinctions that make no difference and says that the holding on "use" in Stern should be jettisoned. I cannot agree.

The decision on that question of law was necessarily involved in the judgment in Stern and should be binding, as here, in a subsequent case with substantially similar facts. No flagrant error or mistake was made in Stern, which was decided

after full deliberation upon the issue by the Court. Parenthetically, I note the "irreconcilable conflict" with the Stern precedent, mentioned by the majority, is created by the analysis it advances in this case.

Accordingly, I would affirm the declaratory judgment of the trial court in all respects.

JUSTICE KOONTZ, dissenting.

I respectfully dissent. In my view, the sole issue presented in this appeal is whether case law subsequent to Stern v. Cincinnati Insurance Company, 252 Va. 307, 477 S.E.2d 517 (1996), warrants reconsideration of the issues decided by that case. The majority, relying upon Randall v. Liberty Mut. Ins. Co., 255 Va. 62, 496 S.E.2d 54 (1998), and Edwards v. GEICO, 256 Va. 128, 500 S.E.2d 819 (1998), reasons that this Court has adopted a more expansive view of what constitutes "using" an insured vehicle within the meaning of Code § 38.2-2206(B) and, thus, our holding in Stern has been called into question. I disagree.

Randall dealt with an individual who was struck and killed by a vehicle while placing lane closure signs along the side of the highway. At that time, he was using the specialized safety equipment of the insured vehicle, which he had driven to the site, to create a safety zone in which to complete his assigned

16

task.  We held that these circumstances constituted a use of the insured vehicle with the meaning of Code § 38.2-2206(B). Randall, 255 Va. at 67-68, 496 S.E.2d at 57.

In Edwards, we held that an individual who was neither the driver nor a passenger of the insured vehicle was nonetheless "using" the vehicle within the meaning of Code § 38.2-2206(B) since he was using specialized equipment associated with the vehicle to change a flat tire on the vehicle.  Moreover, when he was struck and injured by another vehicle, Edwards was in physical contact with the insured vehicle.  We held that his utilization of the insured vehicle's equipment coupled with his intent to drive the vehicle immediately after replacing the tire constituted "using" the vehicle within the meaning of Code § 38.2-2206(B).  Edwards, 256 Va. at 133, 500 S.E.2d at 821.

The underlying rationale of Randall and Edwards was that in each case the action of the injured person constituted a use of the insured vehicle within the meaning of Code § 38.2-2206(B) because there was a causal relationship between the accident and the use of the vehicle as a vehicle even though the actual use was unrelated to the transportation function of the vehicle. This was a logical extension of our decision in Great American Insurance Co. v. Cassell, 239 Va. 421, 424, 389 S.E.2d 476, 477 (1990).  However, nothing in Randall suggests that this rationale would apply to every individual injured while located

17

within a safety zone created by specialized equipment of an insured vehicle. Nor does the application of this rationale in Edwards to a non-passenger, who was actually using specialized equipment while in physical contact with the vehicle, necessarily extend coverage under the statute to every individual who incurs an incidental benefit from specialized equipment of a vehicle. Indeed, both of these questions were previously resolved in Stern.

In Stern, the student, when injured, was within a safety zone created by the activation of the specialized safety equipment of the insured bus by the bus driver for the student's benefit prior to completing her intended mission of becoming a passenger on the bus. Under those specific facts in Stern, we determined that the student was not "using" the school bus within the meaning of Code § 38.2-2206(B). Unlike the circumstances in Randall, the student in Stern was not within the safety zone as a user of the vehicle. Unlike the circumstances in Edwards, the student in Stern was not physically in contact with the vehicle, nor was she utilizing the bus's specialized safety equipment in a manner that constituted a use of the vehicle as a vehicle. Thus, at the time of her injury, Stern was not yet "using," within the meaning of Code § 38.2-2206, the bus she intended to board. The facts of the present case are indistinguishable from those in

Stern, and accordingly, I would hold that our decision in Stern remains viable and controls the outcome of the present case.

For these reasons, I would affirm the declaratory judgment of the trial court in all respects.