# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Matthew J. C. Provencher

v.

Virginia Municipal
Liability Pool et al.

January 29, 1999

Case No. CL98-379

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this insurance coverage case, the court is asked to determine whether the plaintiff was "using" the insured motor vehicle at the time of his injury.

## *Facts*

The pertinent facts are not in dispute. At about midnight on August 24, 1996, the plaintiff, a Spotsylvania County sheriff's deputy, was on routine patrol in his assigned police cruiser traveling west on State Route 208. As he approached the bridge over I-95, he noticed a disabled vehicle on the shoulder portion of the overpass. He also observed two people pushing or attempting to push the vehicle. He pulled his police cruiser behind the disabled vehicle, parked it two or three car lengths away, and activated the blue "bar lights" across the top of the cruiser. He also left his headlights on. He notified his communications officer by radio of his location and mission and exited the cruiser to render assistance. He took his portable radio and flashlight from the cruiser. While he cannot specifically recall whether he left the engine running, he testified that he customarily does leave the engine running during a roadside stop so that the battery does not "run down." He left his cruiser radio on so that he could listen for emergency communications.

The plaintiff's objective was to assist in removing the car from the overpass. As the disabled car was being pushed, the person behind the wheel of the car began steering it into the westbound travel lanes. The plaintiff yelled at her to "get the vehicle back on the shoulder." Moments later, a westbound automobile driven by an underinsured motorist struck the disabled vehicle, seriously injuring the plaintiff.

The collision occurred in the westbound travel lanes of Route 208 less than two minutes after the plaintiff had exited his cruiser. The point of impact was approximately eight to ten car lengths in front of the cruiser.

The defendant acknowledges that its insurance policy, issued to Spotsylvania County, provides UM/UIM motorist coverage of $25,000.00 to anyone occupying or using the insured vehicle as a permissive user at the time of injury. The defendant also acknowledges that the plaintiff was a permissive user.

The plaintiff concedes that he was not the named insured under the policy and that he was not "occupying" the cruiser at the time of the accident. Instead, he argues that he was "using" the vehicle within the meaning of the policy and Virginia Code § 38.2-2206(B).

## Decision

In determining whether the plaintiff was "using" the insured cruiser at the time he was injured, the relevant inquiry is whether "there was a causal relationship between the accident and use of the insured vehicle as a vehicle." *Edwards v. GEICO*, 256 Va. 128, at 132 (1998). The UM/UIM coverage mandated by § 38.2-2206 for use of a vehicle "is not limited to the transportation function of the vehicle." *Randall v. Liberty Mutual*, 255 Va. 62, at 66 (1998). If the insured person is using the insured vehicle as a vehicle and as an integral part of his mission when he is injured, he is entitled to UM/UIM coverage. *Randall, supra*; also see *Great American v. Cassell*, 239 Va. 421 (1990), and *Newman v. Erie*, 256 Va. 501 (1998).

In *Randall*, a highway worker was struck and killed while placing lane closure signs along the side of a highway. He had driven the insured truck to the site, left the engine running, and kept on the flashing yellow light on top of the truck as he placed the signs. He was six to ten feet behind the truck on the shoulder of the road when he was struck. The Court observed in *Randall*, and reemphasized the observation in *Edwards*, that the "specialized warning equipment and its relationship to the worker's task made use of the truck more than merely a means of transportation." The Court held that the worker was

"using" the insured truck when he was struck because he was utilizing the truck's specialized equipment to perform his mission.

In *Cassell*, a fire fighter was standing twenty to twenty-five feet away from his fire truck when he was struck and killed. The insured fire truck had transported to the scene both the fire fighter and certain equipment used to put out a car fire. The truck also was used at the scene as a barrier to restrict traffic flow. At the time he was struck, the fire fighter was writing an incident report on a clipboard that he had taken from the fire truck. The Court concluded that the fire fighter was "using" the fire truck because the vehicle was an integral part of his mission, which had not been completed when the accident occurred.

The facts of this case are distinguishable from those in *Insurance Co. of North America v. Perry*, 204 Va. 833 (1964). In *Perry*, the Court concluded that a police officer, who was serving a warrant when struck, was not using his police cruiser at the time of the accident because he had parked the cruiser, removed the key, gotten out, and walked 164 feet away from the cruiser. The Court said that the officer was not engaged in a transaction essential to the vehicle's use at the time he was struck.

These facts are also distinguishable from those in *U.S. Fire Ins. Co. v. Parker*, 250 Va. 374 (1995). There, a landscape gardener drove herself, other workers, and some plants and tools to the entrance of a housing development in a pickup truck. The gardeners parked the truck so as to provide a safety barrier from passing traffic and began planting ornamental winter cabbages. A door of the truck was left open so that the gardeners could hear a two-way radio inside the truck. Parker was struck by a passing motorist while she was digging a hole ten to fifteen feet from the truck. The Court held that Parker was not using the insured pickup truck at the time she was struck because she was not engaged in a transaction essential to the use of the truck. Later, in *Randall*, the Court pointed out that the truck in *Parker* was "an ordinary pickup truck" that "had no special emergency warning lights" and was positioned for safety purposes by the gardeners independently and not because of any special requirement.

Here, it is evident that the plaintiff positioned his cruiser so as to illuminate the area with his headlights and activated his emergency lights as an integral part of his mission. His mission was to remove, or assist in the removal of, the disabled vehicle from the overpass. As a matter of common sense, the purpose of that mission was twofold: to protect the people in and around the disabled vehicle and to protect passing motorists from the disabled vehicle that was sitting on the side of the overpass. The cruiser was used to divert or influence passing motorists while the mission was being carried out.

That use was just as essential as the use in *Cassell* and *Edwards*. It would be careless, if not idiotic, for a police officer to stop on a bridge or overpass to render assistance to a disabled motorist without using his police vehicle as a safety barrier for himself and the disabled motorist and as a warning to passing motorists.

Accordingly, the court is of the opinion that the plaintiff was "using" the insured police cruiser at the time he was struck and thus is entitled to the UM/UIM coverage afforded by the defendant's policy under § 38.2-2206.