JUSTICE KINSER, with whom JUSTICE LACY joins,
dissenting.
Contrary to the majority’s conclusion, today’s decision will “unreasonably expand the class of persons entitled to uninsured and underinsured coverage to include police officers directing traffic, tower dispatchers directing the movement of trucks in freight yards, and other similar cases.” Therefore, I respectfully dissent.
In deciding whether uninsured or underinsured coverage is mandated by the provisions of Code § 38.2-2206 in a factual context such as the present one, the dispositive question is whether “the injured person [was] using the insured vehicle as a vehicle and as an integral part of [his/her] mission when . . . injured.” Randall v. Liberty *639 Mutual Insurance Co., 255 Va. 62, 66, 496 S.E.2d 54, 56 (1998); see also, Newman v. Erie Insurance Exchange, 256 Va. 501, 508, 507 S.E.2d 348, 352 (1998); United States Fire Insurance Co. v. Parker, 250 Va. 374, 377-78, 463 S.E.2d 464, 466 (1995); Great American Insurance Co. v. Cassell, 239 Va. 421, 424, 389 S.E.2d 476, 477 (1990). Under the specific facts of this case, the relevant question is whether Norman H. Slagle (“Slagle”), is entitled to coverage under Code § 38.2-2206 when he did not occupy the insured vehicle, did not use the vehicle’s specialized equipment, and had no immediate intent to occupy the vehicle? I answer that question in the negative.
As the majority acknowledges, the driver of the tractor-trailer activated the emergency flashers and audible back-up alarm on the vehicle, but Slagle did not utilize that safety equipment to accomplish his mission of directing the tractor-trailer to the location where the construction equipment was to be unloaded. Nor did the safety equipment create a zone of safety for Slagle because he was standing 10 to 30 feet behind the tractor-trailer. Instead, Slagle merely gave hand signals to the driver of the tractor-trailer in order to assist in the movement of the vehicle to a particular place. In my view, the giving of hand signals unaccompanied by the use of any specialized equipment on the tractor-trailer is insufficient to constitute use of the vehicle “as a vehicle” within the meaning of Code § 38.2-2206(B). I do not dispute that the tractor-trailer was being used as a vehicle. But, as the majority notes, the “question is whether Slagle was using it in that capacity.” Slagle’s use of the vehicle is the factor missing in this case. Our prior decisions illustrate that point.
In Cassell, we found that a fire fighter was using a fire truck when he was struck and killed by a hit-and-run driver because he was engaged in a transaction essential to the use of the fire truck at the time of the accident. There, the fire truck and its specialized equipment were used “to extinguish the fire, control traffic and protect the fire fighters, including Cassell.” 239 Va. at 424, 389 S.E.2d at 477. Next, in Randall, we concluded that a worker was using his employer’s pickup truck when he was struck and killed by a motorist as he placed lane closure signs along a highway. 255 Va. at 67, 496 S.E.2d at 57. “The truck’s warning equipment, and the procedures prescribed for putting out the lane closure signs which incorporated the use of the warning equipment, made [the pickup] truck, like the fire truck in Cassell, a specialized vehicle, one designed to be used for more than simply transportation.” Id. When the worker was *640 struck, he “was using the truck’s specialized equipment to perform his mission.” Id.
Similarly, in Edwards v. Government Employees Insurance Co., 256 Va. 128, 132, 500 S.E.2d 819, 821 (1998), we focused on the injured individual’s use of the insured vehicle’s equipment to accomplish his mission. There, that individual was using the vehicle’s jack to remove a flat tire and to place a spare tire on the vehicle so that he could then drive the vehicle to a service station to have the flat tire repaired. Id. at 133, 500 S.E.2d at 821. The individual was “in the process of performing a transaction essential to the use of the insured vehicle when he was struck” by an automobile driven by an uninsured motorist. Id. Because of the use of the vehicle’s equipment and the immediate intent to drive the vehicle, we concluded “that there was a causal relationship between the accident and [the injured individual’s] use of the vehicle as a vehicle.” Id. Likewise, we held in Newman, 256 Va. at 509, 507 S.E.2d at 352, that a child “was using [a] school bus as a vehicle at the time he was injured, based on his use of the bus’ specialized safety equipment and his immediate intent to become a passenger in the bus.”
By contrast, in Parker, a closer case on the facts than the present one in my view, we found that a pickup truck, which had no specialized equipment or emergency warning lights and which was used by landscape gardeners to carry them, their cabbages, and necessary gardening tools to their worksite, “merely was used as a means of transportation.” 250 Va. at 378, 463 S.E.2d at 466. The gardeners parked “the truck at the site in such a position as to provide a ‘safety barrier’ to protect them from speeding motorists” and left the door of the truck open in order to hear a two-way radio and receive messages from their supervisor. Id. at 376, 463 S.E.2d at 465. The injured gardener was struck by a speeding vehicle while she was digging a hole in a flower bed approximately 15 feet from the pickup truck. Id. We found those facts insufficient to bring that case within the Cassell precedent and denied underinsured motorist coverage to the injured gardener. Id. at 378, 463 S.E.2d at 466-67.
Unlike the fire fighter in Cassell, the worker in Randall, the individual changing the tire in Edwards, or the child in Newman, Slagle was not using any of the tractor-trailer’s specialized equipment at the time of the accident to perform his mission. I do not necessarily believe that Slagle had to occupy the vehicle or had to have an immediate intent to do so. Nor do I disagree with the majority’s assertion that “Slagle’s acts in assisting the driver of [the tractor- *641 trailer] were an integral part of Slagle’s mission to locate the construction equipment at a particular place on his company’s construction site.” Nevertheless, the fact remains that the only action Slagle took with regard to the tractor-trailer was to use hand signals to direct the driver. Without something more such as utilizing the vehicle’s specialized equipment, Slagle was not using the insured vehicle “as a vehicle” within the meaning of Code § 38.2-2206(B). Thus, there can be no causal relationship between the accident and Slagle’s use of the vehicle “as a vehicle” because he never used the tractor-trailer.
The majority’s decision today will indeed expand the class of persons entitled to uninsured and underinsured coverage. If a passing motorist had stopped to assist the driver of the tractor-trailer by giving hand signals to direct the movement of that vehicle, the motorist would now be entitled to coverage under Code § 38.2-2206. For the reasons stated, I respectfully dissent and would affirm the judgment of the circuit court.*

 Slagle’s argument that he was a “named insured” under the policy in question is not encompassed within his assignments of error. Thus, I will not address that argument.