Present:  All the Justices

NORMAN H. SLAGLE

                                        OPINION BY
v.  Record No. 031052         JUSTICE LAWRENCE L. KOONTZ, JR.
                                      April 23, 2004
HARTFORD INSURANCE COMPANY
 OF THE MIDWEST

          FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                    E. Preston Grissom, Judge


     In this appeal of a declaratory judgment action, we

consider whether an injured person who did not previously occupy

or immediately intend to occupy an insured motor vehicle was

"using" the insured motor vehicle within the meaning of Code

§ 38.2-2206(B) at the time he was injured and, thus, entitled to

underinsured motorist coverage.

                              BACKGROUND

     The material facts are undisputed.  On November 18, 1999,

at approximately 5:00 a.m., Norman H. Slagle, the vice-president

and construction manager of Vico Construction Corporation

(Vico), met Tim Askew, an employee of Vico, at the corporation's

road widening project on Kempsville Road in the City of

Chesapeake.  Slagle's mission was to indicate to Askew where a

large piece of construction equipment was to be located after it

was unloaded from a tractor-trailer Askew had driven to the

site.  The tractor-trailer was owned by Vico and insured under a

commercial automobile insurance policy issued by Hartford

Insurance Company of the Midwest (Hartford), providing $1,000,000 in uninsured and underinsured motorist coverage.

Along the course of the road widening project, Kempsville Road consisted of two through traffic lanes flanked by right and left turn lanes. In order to unload the construction equipment from the tractor-trailer at the desired location, it was necessary for Askew to back the vehicle from a driveway and then along the right side of Kempsville Road. To assist Askew in accomplishing that maneuver, Slagle stood behind the tractor-trailer and gave hand signals that Askew was able to observe through the tractor's side view mirror. Askew activated the emergency flashers located on the tractor and at the rear of the trailer. The vehicle also had an audible back-up alarm, which was activated when Askew began to back the vehicle.[1] Although Askew had portable orange hazard triangles available in the vehicle, he did not utilize them.

While Slagle was directing the tractor-trailer into the desired position, he was struck by a vehicle driven by Liberty G. Billones. At that time, Slagle was standing 10 to 30 feet behind the tractor-trailer, and Billones was traveling in the

---

[1] The tractor was also equipped with a pole-mounted, rotating amber caution light. The record is unclear whether this light was activated. However, as will become clear, whether this light was activated at the time of the accident is not pertinent to our resolution of this appeal.

far right lane of Kempsville Road. Slagle subsequently brought suit against Billones for injuries he suffered as a result of the accident. Billones' insurance company tendered the full amount of liability insurance coverage available under her policy. Hartford refused to also provide underinsured motorist coverage to Slagle under its policy issued to Vico.

While his suit against Billones was pending, Slagle filed a motion for declaratory judgment against Hartford seeking a declaration that he was an insured under the underinsured motorist provisions of the policy Hartford had issued to Vico. Hartford responded, denying that Slagle was an insured under the terms of the policy. Specifically, Hartford asserted that Slagle was not an insured under the policy because he "was not an operator or occupant of [the insured] vehicle at the time of the accident. He was a pedestrian."

The matter ultimately matured for resolution at a hearing before the trial court. By agreement of the parties, the trial court received into evidence and considered a stipulation of facts, a deposition of Billones, and ore tenus testimony from Slagle reflecting the circumstances under which the accident occurred. Slagle and Hartford filed motions for summary judgment and supporting briefs.

On December 6, 2002, the trial court issued an opinion letter stating that "Code of Virginia §38.2-2206(B) affords

3

[Slagle] no relief under the facts presented in this case." On February 7, 2003, the trial court entered a final order awarding summary judgment to Hartford.[2] We awarded Slagle this appeal.

DISCUSSION

Slagle's claim to underinsured coverage under Hartford's policy in this case is premised upon the mandate of Code § 38.2-2206(A) that motor vehicle liability insurance policies provide uninsured and underinsured coverage to persons insured under the policies. That Billones' vehicle was underinsured is not at issue. The parties' dispute is whether Slagle is an insured under Hartford's policy covering Vico's tractor-trailer. Code § 38.2-2206(B), in pertinent part, defines "insured" as "any person who <u>uses</u> the motor vehicle to which the policy applies" with the consent of the named insured. (Emphasis added). Consent is not an issue. Thus, the focus of our analysis in this case is whether Slagle was using the tractor-trailer in question at the time he was struck by Billones' vehicle.

Determining the circumstances under which persons not occupying or actually operating the insured vehicle at the time

_____

[2] Judge Frederick H. Creekmore, Sr. presided during the evidentiary hearing on the parties' cross-motions for summary judgment and issued the opinion letter stating the rationale underlying the ruling in this case. Judge Creekmore also oversaw the post-judgment proceedings. The record does not disclose the reason for Judge Grissom entering the final judgment order.

4

they are injured in a motor vehicle accident are entitled to uninsured or underinsured motor vehicle insurance has been the subject of a number of our prior decisions.  Apparently, the issue continues to vex litigants and the trial courts as evidenced by the contrasting positions asserted here by Slagle and Hartford in their markedly differing interpretations of those decisions.

Slagle asserts that use of a motor vehicle as contemplated by Code § 38.2-2206(B) does not require operation, occupancy, or contact of the insured vehicle.  He further asserts that this Court has identified the following three factors relevant to the resolution of the issue of use of an insured vehicle by a non-occupant:  "(1) causal relationship between the accident and the use of the vehicle as a vehicle, (2) use of the vehicle to perform an integral part of the mission and (3) use of vehicle [safety] equipment, including warning lights and flashers."  In support of these assertions, and the further assertion that he has satisfied all of these factors, Slagle relies upon Edwards v. Government Employees Insurance Co., 256 Va. 128, 500 S.E.2d 819 (1998); Newman v. Erie Insurance Exchange, 256 Va. 501, 507 S.E.2d 348 (1998); Randall v. Liberty Mutual Insurance Co., 255 Va. 62, 496 S.E.2d 54 (1998); and Great American Insurance Co. v. Cassell, 239 Va. 421, 389 S.E.2d 476 (1990).

5

Relying upon these same decisions, Hartford concludes that this Court has never extended coverage under Code § 38.2-2206(B) where the injured person did not previously occupy or immediately intend to occupy the insured vehicle. In addition, Hartford asserts that even when prior occupancy or the immediate intent to occupy the insured vehicle is established, the injured person must have also used specialized safety equipment or tools from the vehicle as an integral part of his mission in order to qualify as using the insured vehicle. Hartford relies upon United States Fire Insurance Co. v. Parker, 250 Va. 374, 463 S.E.2d 464 (1995) and Insurance Company of North America v. Perry, 204 Va. 833, 134 S.E.2d 418 (1964) to support this assertion.

We take this opportunity to revisit certain prior decisions in an effort to give additional insight and guidance to the proper resolution of the issue presented under Code § 38.2-2206(B) with regard to the required use of an insured motor vehicle. Initially, we agree with Hartford that our prior decisions on this subject have dealt exclusively with instances in which the injured person had previously occupied, or had the immediate intent to occupy, the insured vehicle. See Newman, 256 Va. at 503, 507 S.E.2d at 349 (injured child crossing street to board school bus); Edwards, 256 Va. at 130, 500 S.E.2d at 819-20 (injured person changed flat tire and intended to drive

6

car to service station); Randall, 255 Va. at 63, 496 S.E.2d at 54-55 (injured highway worker drove employer's truck to place closure signs along highway work site); Parker, 250 Va. at 376, 463 S.E.2d at 465 (injured landscape gardener drove company truck to work site); Cassell, 239 Va. at 422, 389 S.E.2d at 476 (injured firefighter traveled to scene of fire in fire pump truck); Perry, 204 Va. at 834, 134 S.E.2d at 419 (injured police officer drove police car to serve warrant). However, we have not previously considered a case, such as the present one, where the injured party neither previously occupied nor immediately intended to occupy the insured vehicle.

A careful review of these cases reveals that occupancy or immediate intent to occupy the insured vehicle did not dictate the distinctions we drew and the different results we reached in them. In Cassell, where we held that the injured firefighter was using the fire truck, we distinguished Perry, where we held that the injured police officer was not using the police car. We noted that the firefighter was "engaged in a transaction essential to the use of the fire truck when he was killed." 239 Va. at 424, 389 S.E.2d at 477. We also noted that, in contrast, the police officer in Perry was not using the police car when he was struck and killed by a passing vehicle 164 feet away from the police car while he was in the process of serving a warrant. Id.

7

Following Perry and Cassell, we again considered the issue of use of an insured vehicle as contemplated by Code § 38.2-2206(B) in Parker. In that case, a landscape gardener was injured by a passing vehicle while she was planting cabbages adjacent to the public road. She had driven her employer's truck to the work site to transport the cabbages and tools necessary to plant them. She parked the truck in a position to provide a safety barrier to protect her from speeding motorists. She was struck while digging a hole for the cabbages 12 to 15 feet from the truck. Parker, 250 Va. at 376, 463 S.E.2d at 465. In Parker, we observed that the critical inquiry in determining the issue of use contemplated by the statute is whether there was "a causal relationship between the incident and the employment of the insured vehicle as a vehicle." Id. at 377, 463 S.E.2d at 466. We addressed that inquiry and distinguished Cassell, finding that Parker was not engaged in a transaction essential to the use of the insured vehicle when she was injured. Id. at 378, 463 S.E.2d at 466.

In Randall, we held that an injured highway worker was using the insured truck for purposes of Code § 38.2-2206(B) while placing lane closing signs along the highway because the "truck's warning equipment, and the procedures prescribed for putting out the lane closure signs which incorporated the use of the warning equipment, made [the injured party's] truck, like

8

the fire truck in Cassell, a specialized vehicle, one designed to be used for more than simply transportation." Randall, 255 Va. at 67, 496 S.E.2d at 57. In reaching our decision in Randall, we distinguished Parker on the grounds that the insured vehicle in that case had no special warning lights and was not required by the employer to be positioned to create a safety zone and, thus, was . . . " 'merely used as a means of transportation' " to the work site. Id., 496 S.E.2d at 56 (quoting Parker, 250 Va. at 378, 463 S.E.2d at 466). Most significantly, we noted that "[i]f the injured person is using the insured vehicle as a vehicle and as an integral part of his mission when he is injured, he is entitled to [underinsured] coverage under § 38.2-2206." Randall, 255 Va. at 66, 496 S.E.2d at 56. We also noted that the coverage mandated by this statute for use of a vehicle is not limited to the transportation function of the vehicle. Id.

In Edwards, we determined that Randall and Cassell compelled the conclusion that the person injured by a passing vehicle while he was in the process of changing a flat tire on an insured vehicle by using the vehicle's jack and spare tire was using the vehicle as contemplated by Code § 38.2-2206(B). Edwards, 256 Va. at 133, 500 S.E.2d at 821. We reasoned that his mission was to drive the vehicle to a service station to have the tire repaired and that an integral part of that mission

9

required the use of the vehicle's equipment.  Thus, we held that the injured person was "in the process of performing a transaction essential to the use of the insured vehicle when he was struck."  Id.  As we had in Randall and in Parker, we again noted that in determining whether an injured person was using the insured vehicle at the time he was injured the relevant inquiry is whether "there was a causal relationship between the accident and the use of the insured vehicle as a vehicle."  Id. at 132, 500 S.E.2d at 821.

Finally, in Newman we relied upon Randall and Edwards and concluded that a student "was using the school bus as a vehicle at the time he was injured, based on his use of the bus' specialized safety equipment and his immediate intent to become a passenger in the bus.  Those facts establish the required causal relationship between the accident and [the student's] use of the bus as a vehicle."  Newman, 256 Va. at 509, 507 S.E.2d at 352.

It should become apparent from this review of these cases addressing the requirements for an injured person to qualify as a person who "uses" an insured vehicle as contemplated by Code § 38.2-2206(B), that the critical inquiry is whether there was a causal relationship between the incident and the employment of the insured vehicle as a vehicle.  It should also be apparent that because the resolution of that inquiry is necessarily

10

dependent upon the particular factual circumstances of each case, the inquiry does not lend itself to resolution by strict guidelines or a set formula.  Rather, we have established some general guidelines.  The injured person must be using the insured vehicle as a vehicle and as an integral part of his mission.  Actual use of the vehicle as a vehicle is not restricted to its transportation function.  See, e.g., Randall, 255 Va. at 66, 496 S.E.2d at 56.  Use of the vehicle need not be the direct, proximate cause of the injury "in the strict legal sense."  State Farm Mutual Auto Insurance Co. v. Powell, 227 Va. 492, 500, 318 S.E.2d 393, 397 (1984).

In this context, the assertions made by both parties in the present case miss the mark.  To the extent that Slagle suggests that we have established a list of factors that are dispositive in resolving the issue of use contemplated by Code § 38.2-2206(B), we disagree.  To the extent that Hartford suggests that occupancy or the immediate intent to occupy the insured vehicle is a prerequisite to the coverage afforded by this statute or that in the latter circumstance the injured person must have utilized the special safety equipment of the insured vehicle, we also disagree.  Occupancy, the immediate intent to occupy the insured vehicle, and the utilization of special safety equipment are several of many factors, if relevant in a particular case,

11

which may be considered in resolving the issue of use contemplated by the statute.

In the present case, the insured tractor-trailer was being employed to transport and ultimately position a large piece of construction equipment along a public road which was to be widened by Vico. In order to position the construction equipment at the desired place at the construction site, it was necessary for the driver to back the tractor-trailer from a driveway and then along the side of the road. Slagle, in his capacity as vice-president and construction manager of Vico, was present at the scene before the driver began this maneuver. Slagle's mission was to direct the driver to the place where the equipment was to be located when it was unloaded from the tractor-trailer. Slagle did so by giving hand signals, which were observed by the driver through the tractor's side view mirror, while Slagle stood 10 to 30 feet behind the vehicle. Clearly the tractor-trailer under those circumstances was being used as a "vehicle" within the meaning of Code § 38.2-2206(B). The question is whether Slagle was using it in that capacity.

Although the driver of the tractor-trailer activated the vehicle's emergency flashers and audible back-up alarm, there is no factual basis to conclude that this safety equipment effectively created a safety zone for Slagle. Moreover, there is no factual basis for a conclusion that Slagle relied upon

12

them for that purpose.  Nevertheless, Slagle's hand signals to the driver effectively determined the direction and movement of the tractor-trailer and were required by the driver for the completion of the intended maneuver of the vehicle. Accordingly, there was a causal relationship between the incident in which Slagle was injured and the employment of the tractor-trailer as a vehicle because Slagle's acts in assisting the driver of that vehicle were an integral part of Slagle's mission to locate the construction equipment at a particular place on his company's construction site.[3]  In reaching this conclusion we note that it was not necessary for Slagle to have physical contact with the tractor-trailer to assist the driver. Indeed, in order for Slagle to have an adequate field of view and to see and communicate with Askew, it would have been necessary for him to be some distance away from and to the side and rear of the vehicle.  Similarly, it was not necessary for Slagle to have previously occupied or immediately intended to occupy the tractor-trailer to use that vehicle to accomplish his

---

[3] Expanding on an argument made on brief, Hartford asserted during oral argument of this appeal that direction of a vehicle by visual and audible signals cannot constitute use of the vehicle because this would unreasonably expand the class of persons entitled to uninsured and underinsured coverage to include police officers directing traffic, tower dispatchers directing the movement of trucks in freight yards, and other similar cases.  We emphasize that our decision in this case is predicated on the specific facts under which Slagle's injury occurred.

mission. Contrary to Hartford's assertion, under the undisputed facts of this case Slagle was not a mere pedestrian at the time he was injured.

For these reasons, we hold that, under the circumstances of this case, Slagle was using the tractor-trailer in a manner contemplated by Code § 38.2-2206(B) and, thus, was an insured entitled to the underinsured motorist coverage applicable to that vehicle. We further hold that the trial court erred in entering summary judgment for Hartford and denying summary judgment to Slagle.

### CONCLUSION

Accordingly, we will reverse the judgment of the trial court and enter final judgment for Slagle.

Reversed and final judgment.

JUSTICE KINSER, with whom JUSTICE LACY joins, dissenting.

Contrary to the majority's conclusion, today's decision will "unreasonably expand the class of persons entitled to uninsured and underinsured coverage to include police officers directing traffic, tower dispatchers directing the movement of trucks in freight yards, and other similar cases." Therefore, I respectfully dissent.

In deciding whether uninsured or underinsured coverage is mandated by the provisions of Code § 38.2-2206 in a factual

14

context such as the present one, the dispositive question is whether "the injured person [was] using the insured vehicle as a vehicle and as an integral part of [his/her] mission when . . . injured." Randall v. Liberty Mutual Insurance Co., 255 Va. 62, 66, 496 S.E.2d 54, 56 (1998); see also, Newman v. Erie Insurance Exchange, 256 Va. 501, 508, 507 S.E.2d 348, 352 (1998); United States Fire Insurance Co. v. Parker, 250 Va. 374, 377-78, 463 S.E.2d 464, 466 (1995); Great American Insurance Co. v. Cassell, 239 Va. 421, 424, 389 S.E.2d 476, 477 (1990). Under the specific facts of this case, the relevant question is whether Norman H. Slagle ("Slagle"), is entitled to coverage under Code § 38.2-2206 when he did not occupy the insured vehicle, did not use the vehicle's specialized equipment, and had no immediate intent to occupy the vehicle? I answer that question in the negative.

As the majority acknowledges, the driver of the tractor-trailer activated the emergency flashers and audible back-up alarm on the vehicle, but Slagle did not utilize that safety equipment to accomplish his mission of directing the tractor-trailer to the location where the construction equipment was to be unloaded. Nor did the safety equipment create a zone of safety for Slagle because he was standing 10 to 30 feet behind the tractor-trailer. Instead, Slagle merely gave hand signals to the driver of the tractor-trailer in order to assist in the

15

movement of the vehicle to a particular place. In my view, the giving of hand signals unaccompanied by the use of any specialized equipment on the tractor-trailer is insufficient to constitute use of the vehicle "as a vehicle" within the meaning of Code § 38.2-2206(B). I do not dispute that the tractor-trailer was being used as a vehicle. But, as the majority notes, the "question is whether Slagle was using it in that capacity." Slagle's use of the vehicle is the factor missing in this case. Our prior decisions illustrate that point.

In Cassell, we found that a fire fighter was using a fire truck when he was struck and killed by a hit-and-run driver because he was engaged in a transaction essential to the use of the fire truck at the time of the accident. There, the fire truck and its specialized equipment were used "to extinguish the fire, control traffic and protect the fire fighters, including Cassell." 239 Va. at 424, 389 S.E.2d at 477. Next, in Randall, we concluded that a worker was using his employer's pickup truck when he was struck and killed by a motorist as he placed lane closure signs along a highway. 255 Va. at 67, 496 S.E.2d at 57. "The truck's warning equipment, and the procedures prescribed for putting out the lane closure signs which incorporated the use of the warning equipment, made [the pickup] truck, like the fire truck in Cassell, a specialized vehicle, one designed to be used for more than simply transportation." Id. When the worker

16

was struck, he "was using the truck's specialized equipment to perform his mission." Id.

Similarly, in Edwards v. Government Employees Insurance Co., 256 Va. 128, 132, 500 S.E.2d 819, 821 (1998), we focused on the injured individual's use of the insured vehicle's equipment to accomplish his mission. There, that individual was using the vehicle's jack to remove a flat tire and to place a spare tire on the vehicle so that he could then drive the vehicle to a service station to have the flat tire repaired. Id. at 133, 500 S.E.2d at 821. The individual was "in the process of performing a transaction essential to the use of the insured vehicle when he was struck" by an automobile driven by an uninsured motorist. Id. Because of the use of the vehicle's equipment and the immediate intent to drive the vehicle, we concluded "that there was a causal relationship between the accident and [the injured individual's] use of the vehicle as a vehicle." Id. Likewise, we held in Newman, 256 Va. at 509, 507 S.E.2d at 352, that a child "was using [a] school bus as a vehicle at the time he was injured, based on his use of the bus' specialized safety equipment and his immediate intent to become a passenger in the bus."

By contrast, in Parker, a closer case on the facts than the present one in my view, we found that a pickup truck, which had no specialized equipment or emergency warning lights and which

was used by landscape gardeners to carry them, their cabbages, and necessary gardening tools to their worksite, "merely was used as a means of transportation." 250 Va. at 378, 463 S.E.2d at 466. The gardeners parked "the truck at the site in such a position as to provide a 'safety barrier' to protect them from speeding motorists" and left the door of the truck open in order to hear a two-way radio and receive messages from their supervisor. Id. at 376, 463 S.E.2d at 465. The injured gardener was struck by a speeding vehicle while she was digging a hole in a flower bed approximately 15 feet from the pickup truck. Id. We found those facts insufficient to bring that case within the Cassell precedent and denied underinsured motorist coverage to the injured gardener. Id. at 378, 463 S.E.2d at 466-67.

Unlike the fire fighter in Cassell, the worker in Randall, the individual changing the tire in Edwards, or the child in Newman, Slagle was not using any of the tractor-trailer's specialized equipment at the time of the accident to perform his mission. I do not necessarily believe that Slagle had to occupy the vehicle or had to have an immediate intent to do so. Nor do I disagree with the majority's assertion that "Slagle's acts in assisting the driver of [the tractor-trailer] were an integral part of Slagle's mission to locate the construction equipment at a particular place on his company's construction site."

Nevertheless, the fact remains that the only action Slagle took with regard to the tractor-trailer was to use hand signals to direct the driver. Without something more such as utilizing the vehicle's specialized equipment, Slagle was not using the insured vehicle "as a vehicle" within the meaning of Code § 38.2-2206(B). Thus, there can be no causal relationship between the accident and Slagle's use of the vehicle "as a vehicle" because he never used the tractor-trailer.

The majority's decision today will indeed expand the class of persons entitled to uninsured and underinsured coverage. If a passing motorist had stopped to assist the driver of the tractor-trailer by giving hand signals to direct the movement of that vehicle, the motorist would now be entitled to coverage under Code § 38.2-2206. For the reasons stated, I respectfully dissent and would affirm the judgment of the circuit court.[*]

---

[*] Slagle's argument that he was a "named insured" under the policy in question is not encompassed within his assignments of error. Thus, I will not address that argument.

19