Present: Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

CHARLES SIMPSON                              OPINION BY
                                   SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 090596                      April 15, 2010

VIRGINIA MUNICIPAL LIABILITY POOL, ET AL.

            FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
                     Thomas V. Warren, Judge

     This is an appeal from the final order in a declaratory

judgment proceeding.  The circuit court was called upon to

determine which, if any, of three automobile insurance

policies afforded coverage to a Deputy Sheriff injured while

trying to subdue an offender being taken into custody.

                      Facts and Proceedings

     The essential facts are undisputed, although the parties

differ as to the inferences and legal conclusions to be drawn

from them.  During the afternoon of February 12, 2004, Malcolm

Estes Robertson, Jr., (Robertson) was driving a 1988 Blazer

westbound on Route 460 in Nottoway County.  Trooper James Inge

of the Virginia State Police (Inge) was parked in the median

of the four-lane divided highway, operating a stationary

radar.  As Robertson's Blazer passed Inge, the radar

registered 68 miles per hour in a 55 mile per hour zone.  Inge

_____

     [1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
12, 2010.

activated his siren and emergency lights and pursued the Blazer. Robertson made a series of evasive maneuvers. He reversed direction on the highway at an interchange and headed eastbound; after pretending to come to a stop, he suddenly accelerated and sped away at speeds up to 90 miles per hour, visibly endangering other motorists.[2] Inge made a radio call for assistance.

Deputy Charles Edward Simpson, of the Nottoway County Sheriff's Office (Simpson) responded to the call. Simpson also activated his emergency lights and siren and approached Inge from behind as Inge was pursuing Robertson in the left lane. Simpson passed both vehicles on the right, intending to get in front of them and force Robertson to slow to a stop. Robertson tried to block Simpson from passing him and struck the left side of Simpson's cruiser several times. At that point Inge passed both Robertson and Simpson on the right, veered left and forced Robertson off the road into the grassy median. Robertson lost control of his vehicle, "fishtailed" in the grassy area, struck the left side of Inge's cruiser and all three vehicles came to a stop.

---

[2] Robertson admitted at trial that his driver's permit was suspended at the time and that he was drinking from a 40-ounce bottle of beer when pursued.

Robertson emerged from his vehicle and almost simultaneously both Inge and Simpson emerged from their cruisers. None of the three had been injured at that time. Robertson took a few steps away from his vehicle and moved toward Simpson, who was approaching him. Inge, whose driver's door was jammed by Robertson's vehicle, left his cruiser through the right side door, came around both vehicles and approached Robertson from behind. Communication between the three was impeded by the noise of the sirens. Just as Simpson and Robertson came together, Inge tackled Robertson from behind and all three men fell to the ground together.

While they were on the ground, other deputies and troopers were arriving at the scene. Simpson tried to get Robertson's arm behind him to apply handcuffs. Although Robertson did not offer resistance, Simpson suffered an injury to his left shoulder while so engaged. Another trooper, who had just arrived, succeeded in handcuffing Robertson. Simpson went out to the highway to direct traffic around the scene. At that point, Simpson, who was left-handed, found himself unable to raise his left arm.

Simpson brought a civil action against Robertson to recover damages for his injuries. Robertson's Blazer was covered by a liability policy issued by Government Employees Insurance Company (GEICO). GEICO, by letter, denied coverage

and refused to defend Robertson on two grounds: (1) Simpson's injuries did not arise out of the "use" of Robertson's insured vehicle, and (2) GEICO's policy excluded coverage for injuries caused intentionally by the insured. Those assertions, if successful at trial, would make Robertson an "uninsured motorist" with respect to Simpson's claim. GEICO's contentions therefore involved two other insurers, Virginia Municipal Liability Pool (VMLP) and National Grange Mutual Insurance Company (NGM). VMLP is a group self-insurance pool, created pursuant to statute, Code §§ 15.2-2700 et seq., that provides coverage for vehicles owned by Nottoway County and other public bodies. VMLP issued a policy that covered the Sheriff's cruiser Simpson was operating on February 12, 2004. NGM issued a family automobile policy covering Simpson's personal vehicle. Both the VMLP policy and the NGM policy afforded uninsured motorist coverage.

VMLP filed this proceeding as a petition for declaratory judgment, naming Simpson, Robertson, GEICO and NGM as parties. VMLP took the position that Simpson was not covered by its policy because (1) Simpson was not "occupying" the Sheriff's cruiser at the time of his injury, and (2) Robertson was not "using" his Blazer at the time of Simpson's injury. Therefore, VMLP contends, Robertson was not an uninsured motorist at the time of Simpson's injury.

4

NGM took the position that its responsibility under Simpson's family policy would arise only out of the "ownership, maintenance or use of an uninsured motor vehicle" and that neither Simpson nor Robertson was using any vehicle at the time Simpson sustained his injuries. GEICO's position was consistent with its initial letter denying coverage.

The circuit court heard the evidence ore tenus. Robertson testified that he was "boxed in" and knew he could not escape, that he turned his engine off and walked away from his vehicle with his arms raised in an attitude of surrender and was holding his keys in his hand when he was tackled from behind. Inge and Simpson testified that they did not see Robertson's arms raised, but neither testified that he offered resistance or attempted to flee on foot. The accounts of the witnesses varied as to the distance Robertson had moved away from his vehicle when he was tackled.[3]

The circuit court ruled that none of the three participants was "using" or "occupying" a motor vehicle when Simpson was injured because the pursuit was over, the drivers were no longer using vehicles to "escape or apprehend," and the use of vehicles played no role in the injury Simpson

---

[3] The circuit court found that Robertson was tackled approximately ten feet from his vehicle. That finding is supported by credible evidence and will not be disturbed on appeal.

sustained while attempting to place handcuffs on Robertson while he was lying on the ground. The court entered a final order ruling that none of the three insurers had a duty to defend Robertson or afford coverage to Simpson. We awarded Simpson an appeal.

Analysis

Simpson assigns error to two rulings by the circuit court: (1) that when Simpson was injured, Robertson was not "using" or "occupying" his vehicle as those terms are employed under the relevant policies and the law of Virginia, and (2) that when Simpson was injured, he was not "using" or "occupying" his Sheriff's cruiser as those terms are so construed. The circuit court's findings of historical fact are supported by credible evidence and are not plainly wrong. Accordingly, they will not be disturbed on appeal. Code § 8.01-680; Hudson v. Pillow, 261 Va. 296, 302, 541 S.E.2d 556, 560 (2001). See also Keener v. Keener, 278 Va. 435, 441, 682 S.E.2d 545, 548 (2009). Simpson's appeal questions the circuit court's legal conclusions. We review such questions de novo. Turner v. Caplan, 268 Va. 122, 125, 596 S.E.2d 525, 527 (2004).

Cases involving the terms "use" and "occupancy" in automobile insurance policies present to the courts such an infinite variety of factual patterns that it is impossible to

6

formulate bright-line rules of universal application or a list of factors dispositive of the issue in every case. Slagle v. Hartford Insurance Company, 267 Va. 629, 636, 594 S.E.2d 582, 586 (2004). Nevertheless, some general standards have evolved in our case law to determine when "use" and "occupancy" begin and end. We observed in Slagle that "the critical inquiry is whether there was a causal relationship between the incident and the employment of the insured vehicle as a vehicle." Id. (emphasis added).[4]

Thus, in Travelers Insurance Co. v. LaClair, 250 Va. 368, 463 S.E.2d 461 (1995), where a motorist stopped by a police officer on a highway shot the officer while the motorist was still partially within his stopped vehicle, we held that the requisite causal relationship between the incident and the motorist's employment of his automobile as a vehicle did not exist. Reversing a judgment for the officer, we observed that "the natural and ordinary meaning of 'use' of a private, passenger motor vehicle does not contemplate its utilization as a mobile or stationary pillbox or fortress, or as a shield, or as an outpost from which an assailant may inflict intentional injury with a firearm." Id. at 373, 463 S.E.2d at

---

[4] No serious contention is made that either Simpson or Robertson was "occupying" a vehicle at the time of Simpson's injury. We therefore confine our discussion to the question of "use."

7

464. Thus, the natural and ordinary purpose of automobile insurance, objectively and reasonably within the contemplation of the parties to the insurance contract at its inception, must be taken into consideration when determining the scope of the coverage. Furthermore, consideration must be given to what the insured person was doing when he was injured, along with his purpose and intent, in determining whether he was in such a relationship to the vehicle as to be injured in its "use." State Farm Mut. Auto. Ins. Co. v. Powell, 227 Va. 492, 500-01, 318 S.E.2d 393, 397 (1984).

A very different fact pattern was presented by State Farm Mutual Automobile Insurance Co. v. Rice, 239 Va. 646, 391 S.E.2d 71 (1990). There, two men embarked on a hunting trip in an insured jeep. Arriving at the point where they intended to begin their hunt, they sat in the jeep, drinking coffee until dawn provided sufficient light to begin their hunt. Both men then alighted from the jeep. The passenger indicated that he intended to walk up to a ridge to hunt and started to walk in that direction. The insured driver remained outside the jeep, reached inside and picked up his rifle, loaded it and replaced it on the driver's seat while he drank another cup of coffee, leaving the driver's side door open. He then placed the coffee thermos back into the jeep and reached inside to pick up his rifle, which accidentally discharged,

8

firing a bullet through the passenger side door that struck the departing passenger.  Id. at 647-48, 391 S.E.2d at 71-72. We held on those facts that there was a sufficient nexus between the injury and the use of the jeep to establish that the injury arose out of the vehicle's "use."  The enterprise in which the jeep was employed, to carry the men and their equipment to the intended hunting site, was still in progress. The passenger, although walking away, was engaged in that enterprise and the driver was still using the jeep when his rifle discharged.  In reaching that conclusion, we adhered to the principles stated in Powell.  The jeep was being used as a vehicle and the enterprise in which it was engaged was not such as to be objectively and reasonably outside the contemplation of the parties to the contract of insurance. See id. at 649-50, 391 S.E.2d at 72-73.

In Insurance Company of North America v. Perry, 204 Va. 833, 134 S.E.2d 418 (1964), a Norfolk police officer parked his cruiser and walked 164 feet away from it to serve a warrant when he was fatally injured by a car driven by an uninsured motorist.  Id. at 834, 134 S.E.2d at 419.  We reversed a judgment in favor of the officer's estate against the city's uninsured motorist carrier on the ground that the officer was not "using" the city's police cruiser when he was injured.  Id. at 838, 134 S.E.2d at 421.  There was no nexus

9

between his earlier use of the cruiser and the injury he sustained.

In Slagle, the manager of a construction company's operations at a work site along a highway was engaged in directing the driver of his company's tractor-trailer as it backed out of a driveway onto the highway and ultimately into a position to unload a large piece of construction equipment at the work site. Standing 10 to 30 feet behind the tractor-trailer, the manager directed its driver by hand signals as the driver watched him through his side-view mirror. While so engaged, the manager was struck and injured by an underinsured motorist. 267 Va. at 631-32, 594 S.E.2d at 583-84. We reversed a judgment in favor of the insurer, holding that the manager, although outside the tractor-trailer, was using it as a vehicle when he was injured. He was employing it in furtherance of his mission to transport the heavy construction equipment to the work site. We noted that the driver had activated his emergency flashers and back-up alarm but there was no evidence that they created a safety zone for the manager or that he had relied on them. Our decision rested solely on the fact that the manager was directing the movement of the tractor-trailer and was using it as a vehicle for the accomplishment of his work. Such "use" was clearly within the

objective and reasonable contemplation of the parties to the contract of insurance.  Id. at 637-38, 594 S.E.2d at 586-87.

Applying the standards illuminated by those cases to the present case, we agree with the circuit court's analysis. Although Simpson's siren and flashing lights were still operating when he left his cruiser to confront Robertson, there is no evidence that they were used or relied upon in any way to accomplish Simpson's purpose at the time he was injured.  His "mission" was to pursue Robertson, bring his dangerous activity to a stop, arrest him, and take him into custody.  By the time Simpson was injured, all those purposes had been accomplished.  The chase ended when Robertson's Blazer rammed Inge's cruiser, bringing both to a stop. Robertson's flight ended when he left his vehicle and walked toward Simpson.  Robertson was unquestionably in custody when he was tackled and taken to the ground.  Simpson's injury occurred after those events.  Thus, neither Simpson's cruiser nor Robertson's Blazer was in "use" as a vehicle at that time.

### Conclusion

The scramble among the three men on the ground was not an event reasonably and objectively such as to have been within the contemplation of the parties to the contracts of automobile insurance involved here.  The circuit court correctly held that the "use" of motor vehicles played no role

11

in the injuries Simpson sustained.  Those injuries did not, therefore, arise out of the use or occupancy of any motor vehicle and none of the three automobile insurance policies under consideration here affords coverage for them. Accordingly, we will affirm the declaratory judgment appealed from.

Affirmed.
