**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Plaintiff—Appellant,

v.

**VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY;** Nationwide Mutual Fire Insurance Company; **Steven Ivey,** Defendants—Appellees,

and

**John A. Robins,** Defendant.

No. 10–1227.

United States Court of Appeals, Fourth Circuit.

Argued: Dec. 9, 2011.

Decided: Feb. 2, 2012.

**ARGUED:** Alexander Spotswood de Witt, Brenner, Evans & Millman, P.C., Richmond, Virginia, for Appellant. C. Jay Robbins, IV, Midkiff, Muncie & Ross, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Suzanne B. Teumer, Johnson Gardy & Teumer, P.C., Suffolk, Virginia, for Appellee Virginia Farm Bureau Mutual Insurance Company.

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

Reversed and remanded by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case concerns which insurer, State Farm Mutual Automobile Insurance Company or Nationwide Mutual Fire Insurance Company, is obligated to cover John A. Robins's liability for property damage resulting from a fire that originated in his vehicle. In a declaratory judgment action, the district court found that the incident was covered by the terms of Robins's insurance policy with State Farm and excluded from coverage by Nationwide because the fire damage "resulted from the ownership or use of" Robins's vehicle under Virginia law. *State Farm Mut. Auto. Ins. Co. v. Robins,* 680 F.Supp.2d 761, 772 (E.D.Va.2010). Because at the time of the fire Robins's van had been functioning for some time as a storage shed for his business equipment and not as a vehicle, we reverse the judgment of the district court.

I.

A.

The relevant facts are undisputed. On August 17, 2008, a fire destroyed Robins's 1988 Ford Econoline 350 Box Van and caused approximately $292,850 in damage to Steven and Cathy Ivey's residential property, which was under construction and vacant at the time. Robins, a self-employed interior trim carpenter and sole proprietor of JAR Custom Building and Remodeling, had been performing construction work at the Ivey residence for several weeks. At the construction project's inception approximately one month prior to the fire, Robins drove his box van to the work site and parked it in front of the Ivey residence. He did not drive the vehicle in the intervening month before the fire. Instead, as the parties stipulated, during those weeks Robins used the cargo section at the rear of the van "solely as a

storage compartment or tool shed for [his] business tools and equipment."

Robins kept the van's cargo area padlocked and opened it only to access the tools and equipment stored inside, none of which were attached to the van itself. Among the items stowed in the van, Robins kept a battery charger and an electric splitter that he connected to an extension cord to power equipment inside the Ivey property. Robins last visited the Ivey work site on Friday, August 15, 2008, padlocking the van's cargo compartment before he left. The fire occurred that Sunday.

Three fire "cause and origin" investigators examined the cause of the fire. Each independently concluded that the fire originated in the rear of the van, but found no evidence to suggest that the box van itself caused the fire. Rather, the investigative reports suggested that the fire was caused by the malfunction of equipment kept in the rear of the van, most likely an electrical problem with an extension cord or battery charger.

### B.

Virginia Farm Bureau Mutual Insurance Company paid Steven Ivey $292,850 for the fire damage to his property pursuant to a homeowner's insurance policy. Farm Bureau subsequently claimed subrogation rights against Robins for the money it paid to Ivey on the grounds that the fire damage was the proximate result of his negligence. Robins, in turn, sought coverage for his potential liability to Farm Bureau under a business auto insurance policy issued by State Farm and a commercial general liability insurance policy issued by Nationwide.

As relevant here, Robins's auto insurance policy for his box van provides that State Farm will pay "all sums an 'insured' legally must pay as damages because of ... 'property damage' to which this insur-

ance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Conversely, the terms of his policy with Nationwide exclude from coverage "'property damage' arising out of the ownership, maintenance, [or] use" of a vehicle owned by the insured. The relevant language in the two policies is therefore such that if one policy covers the fire damage to the Ivey property, the other excludes it.

State Farm sought a declaratory judgment in the United States District Court for the Eastern District of Virginia that it had no obligation to defend, indemnify, or provide insurance coverage to Robins for his alleged liability to Farm Bureau because the relevant loss did not result "from the ownership, maintenance or use of a covered auto." Nationwide responded, asking the court instead to declare that the incident at issue arose from the "ownership or use" of Robins's vehicle and was therefore excluded from Nationwide's general commercial coverage. The parties stipulated to all pertinent facts and State Farm and Nationwide filed cross-motions for summary judgment. The district court denied State Farm's motion and granted Nationwide's motion in part, "to the extent that it asks the Court to find that the property damage arose out of the ownership or use of the van." *Robins*, 680 F.Supp.2d at 772. This appeal by State Farm followed.

Nationwide contends that we must review the district court's grant of summary judgment under a "clearly erroneous" standard because it was based on findings of fact. But summary judgment is awarded only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). And Nationwide misstates the judgment of the district court, which specified: "As the parties have stip-

ulated the facts in this case, only legal issues remain to be decided." *Robins*, 680 F.Supp.2d at 764. The sole issue for consideration in this appeal, whether the fire damage arose out of the "ownership or use" of Robins's vehicle, is one of Virginia law. We therefore review the district court's grant of summary judgment *de novo. See Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010).

## II.

The district court erred in finding that the damage to the Ivey property resulted from the ownership or use of Robins's vehicle such that his potential liability was insured by State Farm and excluded from coverage by Nationwide. It is clear that there is no liability coverage under State Farm's policy for the subject fire loss. As a matter of well-settled Virginia law, to constitute "ownership or use" of a vehicle for purposes of insurance coverage "there must be a causal relationship between the accident and employment of the insured motor vehicle *as a vehicle.*" *State Farm Mut. Auto. Ins. Co. v. Powell*, 227 Va. 492, 318 S.E.2d 393, 397 (1984) (emphasis added). In *Powell*, the Virginia Supreme Court held that a death resulting from the accidental discharge of a shotgun, which was resting on a gun rack fastened to the insured pickup truck, did not arise from use of the vehicle within the meaning of an auto insurance policy or a corresponding exclusion in a homeowner's policy. The discharge occurred while the truck was parked and a group of friends, including the victim, was congregated in and around the vehicle. The court emphasized that the vehicle was not functioning as a truck, but "merely was the situs for a social gathering." *Id.* at 398. It "was equivalent to a park bench, a picnic shelter, a tent, or a shed in that it was being employed as a gathering place for friends and not for any specific enterprise usually associated with

use of a" vehicle, such as transportation. *Id.*

Under the facts in this case, the fire damage likewise did not arise from the ownership or use of the insured vehicle, where the box van was functioning as the "equivalent to ... a shed." *Id.* Nationwide contends that Robins employed the box van as a vehicle because he drove it to the work site at the start of the construction project. But the relevant inquiry is how the vehicle was being used at the time of loss. *See, e.g., Simpson v. Va. Mun. Liab. Pool*, 279 Va. 694, 692 S.E.2d 244, 248 (2010) (concluding that the relevant vehicle was not being used as a vehicle at the time of injury); *U.S. Fire Ins. Co. v. Parker*, 250 Va. 374, 463 S.E.2d 464, 466 (1995) (same). And at the time of the fire, the van was not being used in any way commonly associated with the function of a vehicle.

As Nationwide conceded in the joint stipulation of facts, during the weeks before the fire the van was operating "solely as a storage compartment or tool shed for Robins' business tools and equipment." It had been parked and stationed in front of the Ivey residence for approximately one month. In that time, Robins opened and padlocked the van only to access his equipment and to safely store it near the work site. On the day of the fire, Robins was absent from the work site and the rear of the van, where the fire originated, was padlocked. Accordingly, the van "merely was the situs" of the fire, which was not caused by the van itself but by an electrical problem with equipment that happened to be kept there. *Powell*, 318 S.E.2d at 398. As the district court emphasized in *Doe v. State Farm Fire & Cas. Co.*, 878 F.Supp. 862, 864 (E.D.Va.1995), under Virginia law "[u]sing a vehicle as a heavy stationary object or as an enclosure, rather than as a means of transportation, does

not constitute a contemplated 'use' under the terms" of an insurance policy.

The district court attempted to distinguish this case from *Powell*, noting that here the van was "specifically built with a cargo space intended to hold cargo" and State Farm "was therefore on notice, from the moment it agreed to insure the vehicle, that the van would be used to hold foreign objects within its cargo space." *Robins*, 680 F.Supp.2d at 769. But the vehicle's cargo space does not provide a basis to circumvent the requirement that the vehicle be used "as a vehicle" at the time of the accident.

Of course, the expectations of the parties to the insurance contract are relevant to interpretation of its coverage. *See Powell*, 318 S.E.2d at 397. As the Virginia Supreme Court explained in *Powell*, the "ownership, maintenance, or use" provision "should be construed in the light of the subject matter with which the parties are dealing." *Id.* But read in the context of an automobile liability policy, the provision's "natural and ordinary meaning" requires use of a vehicle as a vehicle. *Id.* The van's cargo capacity may be relevant only within this common sense parameter. For example, if equipment caught on fire while being transported in the van, the outcome might be different. But by contracting to insure a cargo van, State Farm nevertheless insured only damage arising from its function as a vehicle. Under these facts, where the vehicle had been converted to a shed and had not been used for transportation for approximately one month, the van's capacity to carry cargo cannot bear the weight the district court assigned it.

### III.

For the foregoing reasons, the district court erred in denying State Farm's motion for summary judgment and granting in part Nationwide's motion for summary judgment. We therefore reverse these determinations and remand the case to the district court for further proceedings in accordance with this decision.

*REVERSED AND REMANDED.*